# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Peter Acuna, et al.<br><br>   Defendants. | CR 07-01178-TUC-CKJ (JCG)<br><br>REPORT AND RECOMMENDATION |

Pending before the Court is a Motion to Suppress filed by Defendant Peter Acuna on December 18, 2007. (Doc. No. 28.) The Motion initially sought suppression of evidence on the ground that Defendant Acuna's vehicle was stopped without reasonable suspicion and that officers lacked probable cause to arrest Defendant Acuna. Defendant supplemented his Motion to Suppress on January 8, 2008, clarifying that he sought suppression of evidence only on the ground that Defendant Acuna was arrested without probable cause. (Doc. No. 33.) On January 15, 2008, the government filed a Response. (Doc. No. 36.) On January 31, 2008, co-defendant Juan Diego Angulo-Mendoza filed a Motion to Join Motion to Suppress. (Doc. No. 41.) The Motion to Join argued that Defendant Angulo-Mendoza, as a passenger in Defendant Acuna's vehicle, had standing to challenge the stop of the vehicle and his person.

Also pending before the Court are two Motions in limine filed by the Government on February 5, 2008 ("Government's Supplemental Motion in limine") and February 7, 2008 ("Second Government Motion in limine"). (Doc. Nos. 43 & 45.)

1  Also pending before the Court are two Motions in limine filed by Defendant Acuna.
2  The first, which seeks to preclude admission of a purported co-conspirator statement, was
3  filed on Feburary 8, 2008 ("Defendant Acuna's First Motion in limine"). (Doc. No. 49.) The
4  government filed a response on February 13, 2008. (Doc. No. 57.) The second, which seeks
5  to preclude evidence regarding stolen vehicles, was filed on February 19, 2008 ("Defendant
6  Acuna's Second Motion in limine"). (Doc. No. 62.)

7  Also pending before the Court is a Motion for Disclosure filed by Defendant Acuna
8  on February 11, 2008. (Doc. No. 53.) The government filed a response on February 13,
9  2008. (Doc. No. 56.)

10  These matters came before the Court for a hearing and a report and recommendation
11  as a result of a referral on May 31, 2007, pursuant to LRCrim 5.1.

12  These matters were set for hearing on February 19, 2008 and continued on February
13  20, 2008. Defendants Acuna and Angulo-Mendoza, who remain in custody at this time, were
14  present and represented by counsel. Evidence regarding the Motions to Suppress was heard,
15  as were oral arguments regarding each of the pending motions. During the hearing, the
16  government argued for the first time that Defendant Acuna lacked standing to challenge his
17  arrest via a Motion to Suppress because no evidence was seized as a result of his arrest, and
18  therefore no evidence could be suppressed. The matters were submitted following oral
19  argument at the conclusion of the hearing and taken under advisement.

20  Having now considered the matter, the Magistrate Judge recommends that the District
21  Court, after its independent review, deny Defendants Acuna and Angulo-Mendoza's Motion
22  to Suppress. The Magistrate Judge further recommends that the Court grant some of the
23  motions and deny some of the motions. The Magistrate Judge further orders additional
24  briefing.

25  **FACTUAL FINDINGS**

26  At approximately 6:30 a.m. on May 25, 2007, Jalynn Myore, an off-duty Tohono
27  O'Odham Police Officer communications dispatcher, reported to Tohono O'Odham Police
28  Department Ranger Puella that she had observed a tan Chevrolet Avalanche heading

1  eastbound on Federal Route 24 at around milepost 5. According to Myore, the occupants of
2  the Avalanche had their faces pressed close to the windshield. Ranger Puella knew from his
3  experience as a Ranger that occupants of a vehicle seated in this manner (as though their
4  seats are pulled completely forward) are an indication that the vehicle is hauling drugs or
5  illegal aliens.

6  After receiving this report from Myore, Ranger Puella pulled his vehicle over at
7  milepost 1.5 on Federal Route 24 on the south side of the roadway. He parked his vehicle
8  in a northeastern direction so that he could monitor vehicles traveling eastbound on Route
9  24. Approximately 15-20 minutes later he observed the Avalanche[1] headed eastbound on
10 Route 24. He observed the driver of the vehicle through the front windshield.[2] According
11 to Ranger Puella, his vehicle was parked five to ten feet off the roadway and the sun shown
12 through the Avalanche, illuminating the occupants. The driver of the vehicle was a tall, bald
13 man wearing a red shirt. He thought that the passenger was wearing a dark colored shirt.[3]

---

[1] At the hearing, Ranger Puella testified that Jalynn Myore had reported a dark colored Avalanche with passengers seated close to the front windshield. He also testified that when he first saw the Avalanche, it appeared black. On cross examination, Ranger Puella was shown photographs of an Avalanche which he identified as the Avalanche he observed on May 25. He described the Avalanche's color as dark grey in color.

[2] During the hearing, Defendants presented testimony from two investigators who had photographed the Avalanche at the ICE impound lot in Sells and opined that the windows on the Avalanche were heavily tinted such that the officers would not be able to accurately identify the occupants of the vehicle. After the investigators testified that the photographs did not accurately depict what the officers would or would not have been able to observe on the morning in question, the Court denied Defendants' motions to admit the photographs into evidence. The Court admitted two of the photographs as relevant to impeach Ranger Puella's testimony that the windows were not tinted. (Ex. 13 and 19.) Witnesses testified that these two photographs also would not depict whether officers would be able to see through the tinted windows of the Avalanche on the day in question. Although the parties dispute whether and the degree to which the driver's window was tinted, the parties agree and all witnesses testified that the front windshield of the Avalanche was not tinted.

[3] On cross-examination, Ranger Puella acknowledged that in the picture he was shown of Defendant Angulo (Ex. 14), the alleged passenger, Angulo was wearing a light colored shirt.

1  The vehicle passed him at an approximate speed of 55-60 mph.  He had five to six seconds
2  to observe the occupants.  Ranger Puella pulled onto Route 24 and followed the Avalanche,
3  notifying dispatch that he was following the vehicle and providing a description and license
4  plate number.  Ranger Puella followed the vehicle until it pulled into a private residence; at
5  that point, Ranger Puella  continued east and parked north of the intersection of Federal
6  Routes 19 and 24.  Approximately ten or fifteen minutes later, Ranger Puella decided to drive
7  back to the area where the Avalanche had pulled into a private residence.  As he headed
8  westbound on Route 24 he saw the Avalanche headed toward him.  He turned around and
9  followed approximately 10 feet behind the Avalanche.  At the intersection of Routes 19 and
10  24 the Avalanche turned southbound on Route 19.

11  Ranger Puella heard on his radio that Officer Leonard Miguel and Officer Paul Shaw
12  were headed northbound on Route 19 and he reported that the Avalanche had just turned
13  south on Route 19.  As he followed the Avalanche south on Route 19, he observed Officers
14  Miguel and Shaw attempting to stop the Avalanche.  Although these officers' vehicles were
15  flashing lights and sounding sirens, the driver refused to yield.  The Avalanche sped into a
16  residential area, where Ranger Puella witnessed the Avalanche hit a tree.  From a distance
17  of approximately five to six feet, he saw the driver and passenger flee from the vehicle.
18  Although there was dust from the collision, Ranger Puella testified that he had a clear look.
19  Ranger Puella saw a male in a red shirt exit the vehicle from the driver's side; another
20  occupant also exited the vehicle from the driver's side.  Officers other than Ranger Puella
21  pursued the occupants.  Ranger Puella and another officer approached the Avalanche, lifted
22  the tarp covering the cargo, and discovered marijuana.  Ranger Puella saw no other persons
23  exiting or remaining in the Avalanche.

24  Tohono O'Odham Police Officer Miguel testified that was driving northbound on
25  Route 19 when he received word via police radio communications that a suspicious beige-
26  colored Avalanche was traveling eastbound on Route 24.  Officer Miguel stopped and
27  positioned his vehicle facing northbound so that he could observe the Avalanche as it
28  approached.  Officer Miguel saw the Avalanche turn south on Route 19.  He watched the

1  vehicle approach and pass and, from two yards away, observed the occupants through the
2  front windshield. He estimated that the Avalanche was traveling faster than the speed limit
3  which was 35 mph at that location. Officer Miguel testified that he could see clearly through
4  the front windshield, which was not tinted, and observed two occupants in the Avalanche.
5  Officer Miguel observed that the driver of the Avalanche was wearing a red shirt, which he
6  believed to be long-sleeved. Officer Miguel also observed that the driver and the passenger
7  were minorities[4] and that the passenger was light-complected. In the courtroom during the
8  hearing, Officer Miguel identified the driver as Defendant Acuna. He identified the shirt
9  marked as exhibit 12 as being the color that resembles the shirt the driver was wearing.

10  After the Avalanche drove past him, Officer Miguel turned around to follow and
11  attempted to stop the Avalanche by flashing the lights of his vehicle and sounding the
12  vehicle's siren. The driver failed to yield and traveled at a high rate of speed towards a
13  residential area. As Officer Miguel was pursuing the Avalanche, he received another radio
14  dispatch that another vehicle in the area had failed to yield to officers, the occupants had fled,
15  and the vehicle was discovered to contain marijuana. During the chase, Officer Miguel
16  pulled his vehicle, a Ford Expedition, to the left of the Avalanche in a position parallel to the
17  Avalanche, for approximately five to eight seconds, to get a view of the driver. From that
18  position, Officer Miguel testified that he could see clearly into the driver's side window of
19  the Avalanche.[5] When the Avalanche turned east into the residential area, Officer Miguel
20  continued on the roadway and lost sight of the vehicle. Suspecting that the occupants of the
21  vehicle might abandon it and flee on foot, Officer Miguel continued to the next street that
22  provided entrance into the residential area. Officer Miguel was aware that other officers
23  were pursuing the Avalanche; he received a radio dispatch stating that the occupants had fled
24  the vehicle and were traveling on foot through the residential area. As Officer Miguel drove
25  into the residential area, he saw a man wearing a red shirt walking with another individual

---

[4] Officer Miguel testified that to him, minority means Hispanic or Native American.

[5] During cross-examination, Officer Miguel acknowledged that in his report he had written that the driver's window was not tinted.

1 who appeared to be the passenger from the Avalanche. The two men were walking less than
2 50 yards from the place where the Avalanche had been abandoned. Officer Miguel
3 recognized the man in the red shirt as the driver of the Avalanche from his shirt and from his
4 face and, with the help of another officer, arrested the two suspects. The man walking with
5 Defendant Acuna was later determined to be co-defendant Angulo-Mendoza. At the time
6 that Officer Miguel arrested the Defendants, he was not aware that marijuana had been found
7 in the Avalanche.

8 After his arrest, Defendant Angulo-Mendoza waived his rights and gave a statement.
9 Angulo-Mendoza claimed that he had been walking through the desert for three days with
10 a group of people when a man in a Chevrolet Avalanche, later identified as Defendant Peter
11 Acuna, pulled up and offered to give one of them a ride. Angulo-Mendoza accepted the
12 offer; he did not realize that the vehicle contained marijuana until he was inside and the
13 vehicle was driving away. When the two defendants saw police on the road, Defendant
14 Acuna told Angulo-Mendoza to duck his head. Angulo-Mendoza admitted to fleeing from
15 police once the Avalanche stopped.

## ANALYSIS

### *Motions to Suppress*

18 The nature of the Motions to Suppress changed significantly at the hearing. Defendant
19 Acuna's Motion contends he was stopped without reasonable suspicion and that he was
20 arrested without probable cause. In his supplement to the Motion, Acuna acknowledged that
21 no seizure of the vehicle occurred; however, he maintained that the government lacked
22 reasonable suspicion to approach and detain him and lacked probable cause to arrest him.
23 At the hearing, the government argued for the first time that Acuna lacked standing to bring
24 a motion to suppress. According to the government, because (1) the marijuana found in the
25 Avalanche was admissible under an abandonment theory, (2) Defendant's identity -
26 discovered at the time of the arrest - could not be suppressed, and (3) no evidence was
27 discovered as a result of Defendant Acuna's arrest, Defendant Acuna could not move for
28 suppression. The government argued that, for the same reasons, Defendant Angulo could not

1  move to suppress the marijuana, but because he had made statements after his arrest, the
2  statements could arguably be suppressed if his arrest lacked probable cause. The government
3  requested that the hearing on the motion to suppress continue only with respect to the issue
4  of the suppression of Defendant Angulo's statements.

5  In addition, Defendant Angulo-Mendoza, whose Motion to Join the Motion to
6  Suppress emphasizes Defendant Angulo-Mendoza's standing to join in the Motion to
7  Suppress because he was a passenger in the vehicle, asserted at the hearing that his joinder
8  in the Motion to Suppress was focused on the ground that he was arrested without probable
9  cause.  Because Defendant Angulo-Mendoza made a statement following his arrest, he
10 argued that his illegal arrest could be remedied by suppression of his statement. He also
11 argued for dismissal of the charges against him.

12 The Court concluded that Defendant Acuna did not have standing to bring a Motion
13 to Suppress under the applicable case law, but noted that in some circumstances, such as
14 egregious government conduct, there is a basis for dismissal of charges. Because Defendant
15 Acuna did not have the opportunity to address the government's assertions, which were
16 raised for the first time at the hearing and less than one week before trial, and because the
17 evidence as to the arrest of Defendant Angulo would be heard and was identical to the
18 evidence which would be elicited with respect to Defendant Acuna, the Court permitted
19 Defendant Acuna to participate in the hearing on the issue of whether there was probable
20 cause to support each Defendant's arrest.

21 **A.    Defendant Acuna's Motion to Suppress**

22 In order to demonstrate that a seizure violated his Fourth Amendment rights, a
23 criminal defendant must demonstrate a reasonable expectation of privacy in the item seized.
24 *See United States v. Perez*, 644 F.2d 1299, 1303 (9th Cir.1981). Abandonment of the seized
25 item, however, extinguishes the defendant's reasonable privacy expectations. *See United*
26 *States v. Perez,* 689 F.2d 1336, 1338 (9th Cir.1982) (per curiam).  In the present case, it is
27 undisputed that Defendant Acuna abandoned the vehicle. Thus, Defendant Acuna had no
28

1  reasonable expectation of privacy in the marijuana when officers discovered it shortly after
2  Defendant Acuna fled.

3  The marijuana is the only evidence against Defendant Acuna which Defendant Acuna
4  could seek to suppress. No other evidence was obtained. Defendant Acuna did not give a
5  statement. Defendant Acuna's identity could not be suppressed as improperly obtained
6  following an illegal arrest. The identity of a defendant is not suppressible as fruit of an
7  unlawful arrest. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1035 (1984).[6] Because
8  Defendant Acuna cannot identify any evidence that he could validly seek to have the Court
9  suppress, his Motion to Suppress should be denied.[7]

10  At the hearing, Defendant Acuna argued for dismissal based on the alleged Fourth
11  Amendment violation resulting from his illegal arrest. However, even if his arrest was
12  illegal, it would not preclude trial of the Defendant. "An illegal arrest, without more, has
13  never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."
14  *See U.S. v. Crews,* 445 U.S. 463, 474 (1980); *Payton v. New York*, 445 U.S. 573, 592 n. 34
15  (1980).

16  **B.     Defendant Angulo-Mendoza's Motion to Suppress**

17  Defendant Angulo-Mendoza argues that the officers lacked probable cause to arrest
18  him when they stopped him on the street. The Government carries the burden of establishing
19  that, "at the moment of arrest the facts and circumstances within the knowledge of the
20  arresting officers and of which they had reasonably trustworthy information were sufficient

21  _____

22  [6]*Lopez-Mendoza* leaves open the possibility that identity of a defendant might be
23  suppressed if it was obtained through an egregious Fourth Amendment violation. 468 U.S. at 1039. However, in this case, Defendant failed to present any evidence or to make any
24  argument that the officers' conduct was egregious. *See Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1451 (9th Cir. 1994) (stating that a Fourth Amendment violation is egregious when
25  officers act in bad faith such that the violation is fundamentally unfair).

26  [7]Because Defendant Acuna was not entitled to suppression of evidence as a matter of
27  law, he was not entitled to an evidentiary hearing on his Motion to Suppress. For the same reason, Defendant Acuna was not entitled to a continuance of the hearing to allow him to
28  obtain additional evidence regarding the tinting of the windows of the Avalanche to support his Motion to Suppress.

to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir.1980) (internal quotation and citation omitted). Probable cause is to be determined based upon the objective facts available for consideration by the officers participating in the arrest. *Id.* at 560-61. When the officers involved are working in close concert with each other, "the knowledge of one officer is the knowledge of all . . . in the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause." *Id.* at 561; *United States v. Sutton*, 794 F.2d 1415 (9th Cir.1986).

In the present case, Angulo-Mendoza was arrested by Officer Miguel while walking with a man that Officer Miguel recognized by face and by the color of his shirt to be the driver of the Avalanche, Defendant Acuna.[8] Angulo-Mendoza matched Officer Miguel's description of the vehicle's passenger: he was a light-complected, Hispanic male. Officer Miguel had observed the Avalanche failing to yield to officers and knew that the Avalanche was suspected of transporting illicit cargo, based on the reports he received via police radio. Officer Miguel arrested the defendants in the residential area into which Officer Miguel had watched the Avalanche enter. Officer Miguel specifically entered the residential area from a street other than the street where the Avalanche entered, because he suspected that the occupants of the Avalanche would abandon the vehicle and attempt to elude police on foot. Given the totality of these circumstances, Officer Miguel had probable cause to arrest

---

[8]Much of the hearing on the Motion to Suppress was devoted to the issue of whether the officers could see through the Avalanche's tinted windows sufficiently to observe the defendants. The Defendants presented evidence that investigators who examined the Avalanche believed that the tinted windows were a "limo tint" or "black-out" and that you could not see through the tinted window unless you put your face on the windows with your hands cupped around your face. Both officers, however, also testified that they observed the defendants through the windshield, which, undisputedly, was not tinted. The officers' testimony that they could clearly observe the Defendants through the windshield, particularly Defendant Acuna in his red shirt, was compelling and credible.

1 Defendant Angulo-Mendoza. Accordingly, his Motion to Suppress the statements he made
2 after his arrest should be denied.[9]

### *Motions in Limine*

**A. Government's Supplemental Motion in limine (Doc. No. 43)**

Defendant Acuna's supplemental witness list prompted the government to file its First Motion in limine. The government takes issue with four witnesses identified in the witness list. First, witnesses Charlie Taylor and Diane Salvestrini were disclosed by Defendant Acuna as witnesses who may testify regarding the "method used to fingerprint the vehicle," but the witness list does not include explanation as to what method Taylor and Salvestrini used. In addition, Defendant Acuna indicates that Taylor and Salvestrini may testify regarding their visual observations of the vehicle, but does not state what those observations were. At the hearing, the parties indicated that all issues were resolved with respect to disclosure of the proposed testimony and that resolution included a stipulation by the parties that no usable prints were found in the Avalanche. (Doc. 67.) The government therefore withdrew its request for additional disclosure with respect to Mr. Taylor and Ms. Salvestrini.

Second, the government moved to preclude certain testimony by proposed witness Denise Acuna on the grounds of hearsay. The testimony pertained to a telephone conversation between Ms. Acuna and Defendant Acuna. Defendant Acuna, through counsel, indicated that he did not intend to elicit hearsay testimony from Ms. Acuna. Ms. Acuna was expected to testify that she received a telephone call from Defendant and what she did in response to that call.

Finally, the government contends that in the event that witness Rene Alvarez is called to testify regarding Defendant Acuna's reputation and character, his testimony should be limited to truthfulness. At the hearing, Defendant Acuna indicated that he expects Mr. Alvarez to testify that he took Defendant Acuna to Rocky Point and that he paid for

---

[9]Defendant Angulo also argued for dismissal on the grounds that his Fourth Amendment rights had been violated by his illegal arrest. As previously noted, an illegal arrest does not provide a basis for dismissal.

- 10 -

everything and to testify as to events that happened after that; counsel represented that she does not intend to elicit hearsay regarding conversations Mr. Alvarez may have had with Defendant Acuna. Mr. Alvarez has known Defendant since he was a child and could testify as to his reputation for truthfulness if the Defendant testifies. In essence, the parties agreed as to the permissible scope of Mr. Alvarez' testimony. Accordingly, the Magistrate Judge recommends that the government's supplemental motion in limine be granted.

**B. Second Government Motion in limine (Doc No. 45) and Defendant Acuna's First Motion in limine (Doc. No. 49)**

The government contends that Defendants are precluded from eliciting from the agent any exculpatory statements made by Defendant Angulo-Mendoza unless Defendant Angulo-Mendoza testifies at trial because Angulo's statements are hearsay and the exculpatory portions of Defendant Angulo-Mendoza's statement do not fall with the hearsay exception for party admissions within the meaning of Rule 801(d)(2).

The government intends only to elicit testimony from its agent regarding certain portions of Angulo's post-arrest statements, specifically that: the Avalanche pulled up and the driver pointed or held up one finger that he only wanted one person to get in, that Angulo got into the Avalanche and it drove off. Once inside the Avalanche, he saw that it was filled with marijuana. The government contends that this portion of Angulo's statement is admissible under Rule 801(d)(2), Fed. Rules of Evidence (the party opponent exception to the hearsay rule) and that the statements are not in contravention of *Bruton v. United States,* 391 U.S. 123 (1968). Counsel for the Defendants agreed as to the admissibility of the portions of Angulo's statements identified by the government.

The government indicated that it would not elicit other portions of Defendant Angulo's post-arrest statements except to impeach Defendant Angulo in the event that Defendant Angulo testified contrary to the statements he made after his arrest. Defense counsel did not contest the government's assertion that it could impeach Angulo with the other portions of his statement should he testify in a contrary manner.

Defendant Acuna argues in his Motion in limine that Angulo-Mendoza's statements are not admissible under the co-conspirator exception to the hearsay rule. As noted above,

- 11 -

1  Defendant Acuna indicated at the hearing, that he was satisfied with the government's
2  introduction of the identified portions of Angulo's statement that it would seek to introduce
3  into evidence.

4  Based on the parties' agreement, the Magistrate Judge recommends that the
5  Government's Second Motion in limine (Doc. No. 45) and Defendant Acuna's First Motion
6  in limine (Doc. No. 49) be granted.

7  **C. Defendant Acuna's Motion in limine Regarding the GMC Yukon (Doc. No. 62)**

8  Defendant Acuna seeks to preclude the government from offering into evidence the
9  fact that the Avalanche and the Yukon were stolen vehicles. In addition, Defendant Acuna
10 seeks to preclude mention of the Yukon. According to Defendant, such evidence is not
11 relevant to the case against Defendant and even if it were, its prejudicial effect outweighs its
12 probative value. *See* Rules 401 and 403, Fed. R. Evid. The government agrees not to
13 introduce any evidence regarding the Yukon and not to introduce evidence that the
14 Avalanche and the Yukon were stolen. Accordingly, the Magistrate Judge recommends that
15 Defendant Acuna's Second Motion in limine be granted.

16 **D. Amended Motion for Disclosure (Doc No. 53)**

17 Defendant Angulo-Mendoza argues that he is entitled to disclosure of any exculpatory
18 evidence in the government's possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).
19 Defendant also seeks to examine shoes worn by the Defendant at the time of his arrest.
20 Defendant Acuna joined in the motion. (Doc. No. 61.) In its response, the government
21 asserts that it has already provided Defendant with all of the exculpatory evidence in its
22 possession. The government reasserted this position at the hearing. In addition, the
23 government indicated and the Defendant agreed that he had been given the opportunity to
24 examine the boots. Based on the parties' agreement at hearing, the Magistrate Judge
25 recommends that the Motion for Disclosure (Doc. No. 53) be denied as moot.

26 **E. Defendant Angulo's Oral Motion for Production**

27 Shortly thereafter Defendant orally moved for the production of any reports or notes
28 or photographs that were taken during Officer Mase's re-examination of the Avalanche

1  during the time that the suppression hearing was being conducted. The government indicated
2  that it had photographs or tintmeter evidence from that examination, but that it was not
3  obligated to produce the evidence because it was not exculpatory. Rule 16 requires the
4  government to produce reports of examination or tests that are "material" to the defense. The
5  government contends that the term "material" as used in Rule 16 means that the evidence
6  substantially alters the proof in favor the defendant and that the requested materials do not.
7  The defendant disagrees and thinks that "material" means the evidence could assist the
8  defense. Neither party had legal authority available to them at the hearing in support their
9  position.

10  The Magistrate Judge Orders that the parties provide authority to support their request
11  and opposition to the request within ten (10) days of the date of this Order. The authority
12  should be provided to the District Court for its determination of this issue.

13  **F.  Oral Request for Production of Tapes of Witness Interviews**

14  The government moved orally for the tapes of witness interviews taken by Defendant
15  Acuna because the transcripts of the interview appeared to be missing portions of the
16  interview. Defense counsel represented that she would look for the tapes and request the
17  tapes from the transcriber. The Magistrate Judge ordered that defense counsel request and
18  make attempts to obtain the tapes before the close of business on Friday, February 22, 2008.
19

20  **G.  Motion to Produce (Doc No. 65) and Motion to Compel/Produce (Doc. No. 72)**

21  In his Motion to Produce, Defendant Acuna requests the Court to order the
22  government to remove the driver's side windows and the passenger's side windows of the
23  Chevrolet Avalanche to be used as a defense exhibit at the hearing on the defendants' pretrial
24  motions because the tinting of the windows is at the crux of the defense's case. As the Court
25  has concluded the suppression hearing, this Motion is moot and is therefore denied.
26  In his Motion to Compel/ Produce, Defendant Acuna requests that the Court order the
27  Government to either bring the Chevrolet Avalanche to the courthouse during the trial so that
28  the jury can view the windows or enter an order to transport the jury to Sells, Arizona to view

the vehicle at the ICE impound lot because the tinting of the windows is at the crux of the defense's case and in light of the Magistrate's decision to not admit the Defendant's photographs of the windows.

The government opposes both of the requests on the grounds that a viewing of the windows will not be probative with respect to what could be seen at the date, time and place that the officers viewed the vehicle.

Neither party submitted legal authority in support of their position. Therefore, the Magistrate Judge Orders that the parties provide authority to support their request and opposition to the request within ten (10) days of the date of this Order. The authority should be provided to the District Court for its determination of this issue.

**H.  Oral Motion to Sever**

At the end of the hearing, counsel for Defendant Angulo indicated that, although he was comfortable with the government's stipulation regarding the portions of Angulo's statements that were admissible at trial, he had concerns that it would require his client to remain silent and not to testify at trial because if Angulo did decide to testify, it would open the door to a *Bruton* issue. The government could attempt to impeach him with his post-arrest statements and this might result in inculpating Acuna. Consequently, Defendant Angulo requested a severance.  It appears that Defendant Angulo's concerns are with inculpating Defendant Acuna as he did not assert any reasons why a failure to sever would prejudice him.

Because additional authority should be presented, the Magistrate Judge Orders that Defendant Angulo, within ten (10) days of the date of this order, file a motion, supported by authority, if he is seeking severance. If such motion is filed, the government shall be permitted the response time set forth in the applicable rules. The Motion should be directed to the District Court for its determination of this issue.

## CONCLUSION

Based on the foregoing, it is hereby ordered that:

1       (1) With respect to Defendant Angulo's Oral Motion for Production of recent reports and tests pertaining the Avalanche, within ten days of the date of this order, the parties provide authority as to whether the requested documents are "material" to the defense as that term "material" is used in Rule 16, Federal Rules of Criminal Procedure. The authority should be provided to the District Court for its determination of this issue.

      (2) With respect to Defendant Acuna's Motion to Compel/Produce (Doc. No. 72), within ten days of the date of this order, the parties shall provide authority to support their request and/or opposition to the request. The authority should be provided to the District Court for its determination of this issue.

      (3) With respect Defendant Angulo's oral motion to sever, Defendant Angulo, within ten (10) days of the date of this order, shall file a motion, supported by authority, if he is seeking severance. The Motion should be directed to the District Court for its determination of this issue.

      (4) IT IS FURTHER ORDERED that Defendant Acuna's Motion to Produce (Doc. No. 65) is denied as moot.

## RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court:

      (1) deny Defendant Acuna's Motion to Suppress (Doc. No. 28);

      (2) deny Defendant Angulo-Mendoza's Motion to Suppress (Doc. No. 41);

      (3) grant the Government's First Motion in limine (Doc. No. 43);

      (4) grant the Government's Second Motion in limine (Doc. No. 45);

      (5) grant Defendant Acuna's First Motion in limine (Doc. No. 49);

      (6) grant Defendant Acuna's Motion in limine regarding the GMC Yukon (Doc. No. 62); and

      (7) deny Defendant Angulo's Motion for Disclosure (Doc. No. 53) as moot.

1    The parties have ten (10) days to serve and file written objections to the Report and
2 Recommendation.  The parties are advised that any objections should be filed with the
3 following caption: CR-07-01178-TUC-CKJ.

    DATED this 21st day of February, 2008.

_____
Jennifer C. Guerin
United States Magistrate Judge