1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE DISTRICT OF ARIZONA

10   UNITED STATES OF AMERICA,            )
                                          )
11           Plaintiff,                   )
                                          )      No. CR 07-1178-TUC-CKJ (JCG)
12   vs.                                  )
                                          )          **ORDER**
13   PETER ACUNA, et al.,                 )
                                          )
14           Defendants.                  )
                                          )

15

16       On February 21, 2008, Magistrate Judge Jennifer C. Guerin issued a Report and

17   Recommendation [Doc. # 82] in which she recommended that Defendant Acuna' Motion to

     Suppress [Doc. # 28] be denied, Defendant Angulo-Mendoza's Motion to Suppress [Doc. #
18
     41] be denied, the government's First Motion in Limine [Doc. # 43] be granted, the
19
     government's Second Motion in Limine [Doc. # 45] be granted, Defendant Acuna's First
20
     Motion in Limine [Doc. # 49] be granted, Defendant Acuna's Motion in Limine Regarding
21
     the GMC Yukon [Doc. # 62] be granted, and Defendant Angulo-Mendoza's Motion for
22
     Disclosure [Doc. # 53] be denied as moot.  The magistrate judge also directed the parties to
23
     provide this Court with additional authority regarding Defendant Angulo-Mendoza's Oral
24
     Motion for Production and Defendant Acuna's Motion to Compel/Produce [Doc. # 72].  With
25
     respect to Defendant Angulo-Mendoza's Oral Motion to Sever, the magistrate judge directed
26
     Defendant Angulo-Mendoza to file a written motion within ten days of her Order.  The
27

28

magistrate judge advised the parties that they had ten days to serve and file any written objections to the Report and Recommendation.

*Government's Objection to the Report and Recommendation*

The government objects to specified factual findings made by the magistrate judge. After reviewing the pleadings and transcripts, the Court finds that the government's factual objections are well taken.

*Credibility of Witnesses*

Angulo-Mendoza objects to the magistrate judge's finding that the government witnesses were credible. Specifically, Angulo-Mendoza objects to the magistrate judge's apparent adoption of Jalynn Myore's report that she saw an Avalanche in which the occupants "had their faces pressed close to the windshield." Doc. # 82, p. 3. However, the Report and Recommendation did not "adopt" the report. Rather, the Report and Recommendation merely summarized the testimony. Moreover, Ranger Puella was entitled to evaluate that observation in light of his experience. *See e.g., United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000). Further, the photographs introduced into evidence establishes that marijuana bundles were stacked against the driver's and passenger's seats, which may have caused the occupants to sit very far forward in the vehicle. This evidence corroborates the observation by Myore. Angulo-Mendoza also objects to the magistrate judge's apparent adoption of Ranger Puella's assertion that this was an indication that the vehicle was transporting drugs or illegal aliens. However, the Report and Recommendation summarized Ranger Puella's testimony.

Angulo-Mendoza also asserts that information from Ranger Puella that the Avalanche was a dark gray, yet testified that the Avalanche appeared to be black when he first saw it, conflicted with Jalynn Myore's description of a tan vehicle. However, Ranger Puella testified that Myore had told him that she had seen a black or dark-colored Avalanche. An Avalanche, whether tan, dark gray, black, or dark-colored appeared where expected following the

1 information from Myore.  The Court does not find the discrepancies as to the specific color

2 to affect Ranger Puella's testimony.  Angulo-Mendoza also asserts that the magistrate judge

3 should not have accepted Ranger Puella's testimony that he had a "clear look," Doc. # 82, p.

4 4, because dust and debris from the collision would have made it impossible for the ranger to

5 have a clear look.  However, Ranger Puella testified that the dust was not so great that he was

6 uanble to see the individuals who ran from the car.

7      Angulo-Mendoza also asserts that Officer Miguel's testimony was not credible because

8 he indicated in his report that the vehicle did not have tinted windows when the evidence

9 presented established that the windows were tinted.  Angulo-Mendoza also asserts that the

10 magistrate judge erred in limiting the photographs of the tinting of the vehicle windows.  He

11 asserts that adequate foundation for the photographs had been presented. Fed.R.Evid. 901(a).

12 Angulo-Mendoza asserts that, because adequate foundation had been laid, any evidence the

13 government wanted to present to counter the evidence would merely go to the weight, not the

14 admissibility of the evidence.

15      Indeed, Angulo-Mendoza asserts that his major objection to the Report and

16 Recommendation is that the magistrate judge did not order the government to produce

17 photographs and evidence of the tint examination.  He asserts that this evidence was relevant

18 to the evidentiary hearing in that it would make "the existence of any fact that is of

19 consequence to the determination of the action more probable or less probable than it would

20 be without the evidence." Fed.R.Evid. 401.  Angulo-Mendoza asserts that the evidence was

21 relevant to the officers' abilities to see what they purportedly saw.[1]

22

23      [1]The magistrate judge found that the level of tinting would not address the issue of a

24 due process dismissal.  For the conduct of a government agent to result in a due process

dismissal, the conduct must be "so outrageous as to violate the universal sense of justice."

25 *United States v. Ahluwalia*, 30 F.3d 1143, 1144 (9th Cir. 1994), *quoting United States v.*

26 *Smith*, 924 F.2d 889, 897 (9th Cir. 1991).  This high standard has only been applied in the

Ninth Circuit on one occasion.  *Id.*, *citing Greene v. United States*, 454 F.2d 183 (9th Cir.

27 1971).  In order to establish such an allegation, a defendant would have to show that the

28

1    The testimony of Ranger Puella was that he observed the occupants of the vehicle
2 through the front windshield.  He further testified that he was parked five to ten feet off the
3 roadway and the sun shown through the Avalanche, illuminating the occupants.  Evidence of
4 window tinting on the side windows is not relevant to what Ranger Puella was able to observe
5 through the front windshield of the vehicle.  Ranger Puella testified that he observed that the
6 driver was a tall, bald or shaved headed gentleman with a red shirt.  He further testified that
7 it looked like the passenger was wearing a black sweatshirt.  On cross-examination, Ranger
8 Puella acknowledged that a photograph showed Angula-Mendoza, the alleged passenger, was
9 wearing a light-colored shirt.

10    Similarly, Officer Miguel testified that, from two yards away, he could clearly see the
11 occupants through the front windshield, which was not tinted.  Officer Miguel also testified
12 that he could tell that one occupant had been wearing red; he could also tell that the passenger
13 was light complected.  Again, evidence of window tinting on the side windows is not relevant
14 to what Officer Miguel was able to observe through the front windshield. However, Officer
15 Miguel also testified that he observed the driver through the driver's side window while
16 driving parallel to the Avalanche.  From this position, Officer Miguel testified that he could
17 clearly see that the driver was wearing a red shirt, which Officer Miguel thought was long-
18 sleeved.

19    Angulo-Mendoza asserts, however, Officer Miguel's credibility (and whether he was
20 able to see the driver through the driver's side window) is relevant because Angulo-Mendoza
21 was arrested, in part, because he was walking with a man who Officer Miguel testified that
22 he recognized by face and by the color of his shirt to be the driver of the Avalanche.  Indeed,

23

24 _____

25 government agents in essence "manufactured" the crime for the purpose of generating
   criminal charges – without any motive to impede ongoing criminal activity.  Assuming
26 *arguendo* that additional evidence would have established that Officer Miguel was not
   credible, Defendants have failed to establish that this constitutes government agents
27 manufacturing the crime.

28                                         - 4 -

1    Officer Miguel testified that he was able to identify the driver "[i]n particular . . . because of

2    the red shirt."   Reporter's Transcript, 2/19/08, p. 77.   Officer Miguel referred to Angulo-

3    Mendoza as the individual who "appeared to be the other passenger."   *Id.*, at 76.   Officer

4    Miguel had testified that he lost sight of the Avalanche and learned that the occupants of the

5    vehicle had fled.   Officer Miguel positioned himself where he believed he might intercept the

6    fleeing occupants.   Less than 50 yards from the crash site, Officer Miguel observed two men,

7    one of which was wearing a red shirt, walking together.   In finding probable cause for the

8    arrest, the magistrate judge considered the totality of circumstances, including Defendants'

9    presence where the fleeing occupants were likely to be.

10          The Court agrees with the government that any relevance of the photographs would

11   have been limited without knowing the conditions at the time the photographs were taken

12   compared to the date of the incident.   However, this relates to the weight, not the

13   admissibility, of the evidence.   Nonetheless, the Court agrees with the magistrate judge that

14   the evidence would have been cumulative to the photographs and testimony already submitted

15   during the hearing.

16          Moreover, Agent Puella observed the marijuana immediately after the occupants of the

17   Avalanche had fled.   The officers had been in communication with each other throughout the

18   incident and, pursuant to the collective knowledge doctrine, Agent Puella's knowledge is

19   imputed to Officer Miguel.   *See United States v. Ramirez*, 473 F.3d 1026 (9tth Cir. 2007);

20   *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir. 1980).   Although no specific times were

21   given, the description of the circumstances clearly indicates that the marijuana was discovered

22   before Defendants were arrested.   Furthermore, Officer Miguel, in an area where the fleeing

23   occupants were likely to be, recognized Acuna as the driver of the Avalanche.   Again, the

24   observations of Ranger Puella are imputed to Officer Miguel.   Additionally, Angulo-Mendoza

25   matched Officer Miguel's vague observations of the passenger and Angulo-Mendoza was

26   with the driver of the Avalanche in a location where the occupants were likely to be.   The

27   Court finds Officer Miguel had probable cause to arrest Angulo-Mendoza.

28                                          - 5 -

1   *Oral Motion for Discovery*

2   During the evidentiary hearing before the magistrate judge, defense counsel learned

3   of a tint meter reading conducted by government agents.  It appears that, based in part on the

4   late request and the cumulative nature of the proposed evidence, the magistrate judge denied

5   the request for disclosure or discussion of the tint meter reading.  The Court notes that the

6   magistrate judge ordered that the defense be afforded an opportunity to conduct a tint meter

7   test prior to the trial.  The Court does not find the magistrate judge's ruling to have been

8   clearly erroneous.  *See United States v. Abonce-Barrera*, 257 F.3d 959, 968 (9th Cir. 2001)

9   (non-dispositive issues reviewed under a clearly erroneous standard).

10

11   *Statement of Angulo-Mendoza*

12   Angulo-Mendoza asserts that, if the government wishes to introduce part of Angulo-

13   Mendoza's statement to the jury, Angulo-Mendoza should not be precluded from introducing

14   the balance of the statements.  "When a writing or recorded statement or part thereof is

15   introduced by a party, an adverse party may require the introduction at that time of any other

16   part or any other writing or recorded statement which ought in fairness to be considered

17   contemporaneously with it." Fed.R.Evid. 106. This rules requires the immediate introduction

18   of the requested portions.  John Hardin Young, *Young's Federal Rules of Evidence* (7th ed.

19   2003).  In determining whether Fed.R.Evid. 106 requires the additional recordings to be

20   presented at the time of the government's original presentation, the Court balances the

21   adequacy of later repair of any misleading impression against the disruption of the

22   government's case by immediate introduction of the completing evidence. 21A Charles Alan

23   Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure § 5077.2*(3) (2d ed.

24   2006).[2]

25   _____

26   [2]In cases in which completing the evidence would take a long time and, therefore, disrupt the proponent's presentation of the case, delayed completion may be appropriate.

27   *United States v. Webber*, 255 F.3d 523, 525 (8th Cir. 2001) (ten surveillance tapes); *United*

28

1    The government does not appear to be objecting to a complete presentation based on

2  the interruption to the government's presentation, but to the possible *Bruton* ramifications and

3  hearsay objections.   However, Angulo-Mendoza has not specified which portions of his

4  statement should be included and why such portions could not be redacted to avoid any

5  *Bruton* problems.   Angulo-Mendoza has not presented any authority that Fed.R.Evid. 106

6  provides a blanket authority for the admission of a complete statement, rather than a

7  determination of which portions "ought in fairness to be considered contemporaneously with

8  it."  Fed.R.Evid. 106.   Additionally, the Court agrees with the magistrate judge that Angulo-

9  Mendoza's statement is not admissible as a co-conspirator statement.   The Court will adopt

10  the Report and Recommendation on these issues, but Angulo-Mendoza is granted leave to

11  resubmit this issue to the Court with sufficient factual details for the Court to determine

12  whether any, or all, of Angulo-Mendoza's statement is subject to the rule of completeness.

13  Any such request shall be filed on or before April 25, 2008.[3]

14

15  *Motion to Compel/Produce* [Doc. # 72]

16    The magistrate judge also directed the parties to provide this Court with additional

17  authority regarding Defendant Angulo's Oral Motion for Production and Defendant Acuna's

18  Motion to Compel/Produce.  Defendants request that the government be directed to bring the

19  Avalanche to the courthouse for a viewing by the jury or the Court order the jury be

20  _____

21  *States v. Spearman*, 186 F.3d 743, 755 (6th Cir. 1999) (where defense wanted prosecution
   to play entire videotape of trip to Florida, it was not unfair for court to give defense the right
22  to play entire tape during its own case instead); *United States v. Branham*, 97 F.3d 835, 850
   (6th Cir. 1996) (court denied defendant's request to compel government to play all audiotapes
23  in chronological order; court allowed defendants opportunity to present remaining recordings
24  during the presentation of their evidence).

25    [3]A court may consider a party's delay in asking for completeness and the resulting
   harm to the proponent.  Wright & Graham, *supra, § 5077.2(11)*; *see also United States v.*
26  *Webber*, 225 F.3d 523 (8th Cir. 2001) (proper to defer completion where, along with other
27  considerations, defense failed to specify portions needed for completion).

28

transported to Sells, Arizona, to view the vehicle. The government objects. The Court finds it would be assisted by additional argument on this issue and will schedule this matter for oral argument.

*Motions to Sever* [Doc. #s 94 and 96]

The Court will schedule the Motions to Sever for oral argument.

*Oral Motion for Production*

Defendant Angulo-Mendoza made an oral motion for production of recent reports and tests pertaining to the Avalanche. The magistrate judge directed the parties to submit any authority as to whether the requested documents are material to the defense. Defendant Angelo has not submitted any such authority. The government has filed an opposition to the request for the production. Defendant Angulo having failed to show that the requested reports and tests are material, the Court will deny the requested production.

Accordingly, IT IS ORDERED:

1.    The Report and Recommendation [Doc. # 82] is ADOPTED.

2.    Defendant Acuna's Motion to Suppress [Doc. # 28] is DENIED.

3.    Defendant Acuna's oral Motion to Dismiss is DENIED.

4.    Defendant Angulo-Mendoza's Motion to Suppress [Doc. # 41] is DENIED.

5.    The government's First Motion in Limine [Doc. # 43] is GRANTED.

6.    The government's Second Motion in Limine [Doc. # 45] is GRANTED.

7.    Defendant Acuna's First Motion in Limine [Doc. # 49] is GRANTED.

8.    Defendant Acuna's Motion in Limine Regarding the GMC Yukon [Doc. # 62] is GRANTED.

9.    Defendant Angulo-Mendoza's Motion for Disclosure [Doc. # 53] is DENIED AS MOOT.

10. Defendant Angulo-Mendoza's Oral Motion for Production and Defendant Acuna's Motion to Compel/Produce [Doc. #s 72 and 93] is scheduled for oral argument on April 28, 2008, at 8:30 a.m.

11. Defendants' Motions to Sever [Doc. #s 94 and 96] are scheduled for oral argument on April 28, 2008, at 8:30 a.m.

12. Defendant Angulo-Mendoza's oral Motion for Production of recent reports and tests pertaining to the Avalanche is DENIED.

DATED this 22nd day of April, 2008.


Cindy K. Jorgenson
United States District Judge